FRANCISCA A. RIVERA DE HERNÁNDEZ, Plaintiff and Appellee, *v.* FELIPE HERNÁNDEZ RIVERA ET AL., Defendants and Appellants.

No. 5894. Argued December 13, 1932.—Decided January 11, 1933.

*L. Mercader* for appellant. *Diego E. Ramos* for appellee.

MR. JUSTICE CÓRDOVA DÁVILA delivered the opinion of the Court.

The plaintiff, Francisca A. Rivera, widow of Hernández, sold a rural property called "Dos Bocas" and located in the ward of Río Arriba of Arecibo, to her son Felipe Hernández Rivera for $1,500, which price included a deferred payment amounting to $570, to secure which he constituted a mortgage in favor of his mother on the property thus purchased by him. The plaintiff alleges that on March 7, 1930, the defendant, Felipe Hernández Rivera, on the representation

that as a condition for granting to him an agricultural loan the Puerto Rico Relief Commission had demanded the cancellation of said mortgage, obtained such cancellation from the plaintiff and promised to pay the amount of the mortgage credit or $570 in the following manner: $270 in cash and $300 in a promissory note.

It also alleged that the above representations are insidious and that by means of insidious words and machinations, on which the plaintiff relied, because she had faith in her son at that time, the said defendant induced her to cancel the mortgage credit without any consideration to support the deed of cancellation, thereby depriving her of said mortgage credit. The complaint further alleges that after said defendant had obtained the said cancellation, he refused to pay the $270 as agreed and in addition he took possession of the promissory note, thus depriving the plaintiff of the total amount of the said mortgage credit.

The said defendant in his answer denies the allegations of the complaint and avers that after he had paid the plaintiff's mortgage credit in full, and as he needed to release the property from encumbrances in order to procure a loan from the Relief Commission, both parties went to the office of Attorney Susoni, where the plaintiff after receiving the entire sum that the defendant owed her, granted him the corresponding cancellation; and that in order to avoid the necessity for resorting to the Relief Commission, after the cancellation was effected, the plaintiff tendered to the defendant the sum of $270 which the latter accepted and received and for which he gave the promissory note that the plaintiff now holds.

The lower court rendered judgment in favor of the plaintiff and decreed the annulment of the deed of cancellation and also the record thereof in the registry of property and declared the mortgage in favor of the plaintiff to be in force, with costs and attorney's fees to the plaintiff. In support

of the present appeal five errors are assigned. The first of these is that the lower court should have held that the complaint did not state facts sufficient to constitute a cause of action.

We have already transcribed the essential allegations of the complaint. It is to be noted that the plaintiff alleges that the above-named defendant by means of insidious words and machinations induced her to cancel her mortgage credit; also that said defendant did not deliver the $270 that he had promised to pay to her, that he refused to fulfill what was agreed upon and that the plaintiff authorized the cancellation relying on the delivery of the money and on the truth of the defendant's representation. In our judgment the complaint shows on its face that the plaintiff was the victim of a deceit and that in consequence thereof she consented to cancel the mortgage credit. The relations between the parties to this transaction are of such a nature that the allegations that the defendant had obtained the cancellation on the representation that he had to free the farm in order to obtain a loan from the Relief Commission gains force when one considers that there was involved a plea addressed by the interested party to his own mother.

Section 1221 of the Civil Code, 1930 edition, says that there is deceit where by insidious words or machinations on the part of one of the contracting parties, the other is induced to execute a contract which without them he would not have made. The complaint, following the language of the Code says that the defendant availed himself of insidious words and machinations in order to obtain the cancellation of the mortgage credit.

Manresa in commenting on section 1269 of the Spanish Civil Code, equivalent to section 1221 of our Code, says that the essence of this kind of deceit is to be found in the artifice whereby the consent of the person deceived is exacted or at least enforced. This illustrious commentator points out

that such is the meaning of the statutory expression "insidious machinations," among which are included "a breach of trust and the thousand ways to deceive that may delude a contracting party, producing the false consent without necessarily amounting to a swindle nor falling under any other provision within the scope of the Penal Code."

Scaevola, commenting on the same section, reproduces the definitions of deceit that the Roman Law, the "*Partidas*," and some modern codes offer us and then says: "The same idea is latent in all these provisions—deceit on the part of one of the parties through artifice or perfidious means that induce the other party to execute a contract when convinced of the good faith of the first party by his statements or acts. Deceit, according to the Roman Law, embraces all kinds of cunning, falsity, or machinations employed to surprise, deceive, or defraud another."

The definition is practically the same as that of the words "snare" (*insidia*), or "entrapment" (*asechanza*): "deceit or artifice designed to harm another." The Dictionary of the Spanish Academy defines the word "machination" thus: "Concealed and artificial scheme or contrivance calculated to accomplish a wrongful purpose."

Therefore, in characterizing the statements alleged in the complaint as insidious and in stating that by means of such words and machinations the defendant induced the plaintiff to cancel the mortgage credit, the misrepresentation, deceit, and artifice of which Felipe Hernández Rivera made use in order to accomplish the wrongful purpose sought by him were alleged. We are of the opinion that the court did not commit the error assigned.

The defendant and appellant maintains that the lower court erred in not granting the motion for nonsuit. We have carefully examined the testimony and the sworn allegations of plaintiff Francisca Rivera as well as those made by the defendant also under oath, and we believe that the lower

court did not err in denying the motion for nonsuit. By bearing in mind both the defendant's admissions in his answer and the plaintiff's testimony, and admitting them to be true for the purpose of said motion, it can readily be concluded that the court acted properly in overruling the motion.

The appellant urges that the court erred in sustaining the complaint thereby affirming that fraud existed in the execution of the deed of cancellation and that the plaintiff's consent thereto was attained through insidious machinations and. deceit on the part of both defendants who, according to the court, have failed to pay to the plaintiff either the amount of the mortgage or any sum whatsoever. It is also claimed that the court committed grave and manifest error in weighing the evidence, and in making those findings which are said to be wholly contrary to law. In the first place, we wish to make clear that the lower court did not refer to both defendants when it spoke of insidious machinations and deceit, but exclusively to Felipe Hernández Rivera. In the opinion of the lower court no mention is made of Mercedes González except to say that she is the defendant's wife. In fact, said opinion does not impute any charges to her and none of the pronouncements of the judgment rendered affects her in any way.

We will now discuss the third and fourth assignments of errors above stated. As we have seen, it is alleged in the complaint that the defendant, Felipe Hernández Rivera, by means of insidious words and machinations induced the plaintiff to cancel the mortgage credit. Francisca Rivera states that her son asked her to cancel the mortgage in order that he might do business with the Relief Commission. In his answer, the defendant alleges that as he needed to free the farm of encumbrances in order to apply for a loan to the Relief Commission, he and his mother went to the office of Attorney Susoni where the deed of cancellation was executed.

The amount of the canceled credit was not paid in the presence of the attesting notary. Said sum, amounting to $400, was paid, according to the defendant, between 6:30 and 7 o'clock in the morning of the day of cancellation. The defendant explains that he obtained this money from the property, that is, from the sale of the coffee crop and several pigs, and that he had procured this money in order to pay his mother and then turn the farm over to the Relief Commission. According to the defendant, the mother, upon receiving the money, distributed $100 among her children, kept $30, and gave Mercedes, his wife, $270 to keep for her. The defendant adds that the mother insisted that he should not turn the farm over to the Relief Commission and said to him: "I gave Mercedes $270 to keep for me and I'll let you take it without interest." The defendant told his mother that the Relief Commission would not charge him interest. The mother promised not to charge any either, and then he abandoned the idea of the loan. All of this occurred on the same day and several hours before the deed of cancellation was executed. The mother in this short interval gave away a part of the money, kept $30 for her expenses, gave her daughter-in-law $270 to keep for her and later lent this same amount to her son. This testimony of Felipe Hernández is in open conflict with the statements in his answer. In his verified answer the defendant says that the mother, after the cancellation was effected, in order to avoid recourse to the Relief Commission offered him the sum of $270 which he accepted. In his testimony the defendant speaks of the negotiations that took place between 6 and 7 o'clock in the morning of the day of the cancellation, and adds that on the way she insisted upon lending him the money without interest and that he abandoned the idea of the loan from the Relief Commission. The promissory note signed in the office of Attorney Susoni, when the deed of cancellation was executed, clearly shows that the drawing of this document was agreed upon

beforehand by the parties. It is remarkable that Felipe Hernández Rivera, who solicited the cancellation of the mortgage in order to obtain a loan, should have in his possession the sum of $400 and that he should pay this sum for a debt that was not due and of which the creditor was his own mother. If it is true that the mother lent him $270 without interest, and that the defendant then desisted from the loan from the Relief Commission, why was complete cancellation effected when the defendant had already attained his purpose, which was the loan without interest? Why insist that the mortgage credit be totally canceled? Reading the testimony of the defendant we understand perfectly why the lower court gave no credence to it. Francisca Rivera states that her son offered, if the cancellation were effected, to give her $270 in cash and $300 in a promissory note; that she canceled the mortgage and that she has never received a cent from her son; that he even took away the $300 that he gave her when she sold him the property, to put it in the bank, and she doesn't know what he did with this money; that on the day of the cancellation Attorney Susoni turned over to her a promissory note that was made there; that after leaving the office Felipe took the document from her to carry it because she had no purse, and now he denies the promissory note; that when she reached his house she told Felipe's wife to look for the note and she answered that she did not know where Felipe had put it, and the plaintiff told the latter to give her the note and he answered that he had it in the trunk, that she asked Felipe's wife for the note because she took care of her husband's documents; that she has asked him to pay her or to return the document and that he has not paid her anything nor has he returned the note; that when she came to cancel the mortgage she was on very good terms with her son and that now, as a result of what has happened, she is not, that she does not live with him, that after such things happen it is very hard to live together; that she had

faith that her son would give her the money when the mort-gage was canceled, and that otherwise, she would not have canceled it.

The evidence does not show what has become of the promissory note made in Attorney Francisco Susoni's office. The defendant states that his younger brother once went to him with the note to sell it to him and that the defendant, fearing that they would demand payment of him without his having it, went to Arecibo with his brother to consult Mr. Susoni. Indeed, Mr. Susoni testified that the defendant was in his office accompanied by another person who said that he was a brother, that the defendant showed him the note and asked what he should do with it, and that the witness said that the note was the property of the mother and that it should be returned to her to keep and collect when it should fall due. It is to be noted that Mr. Susoni, in answering the questions relating to the person who accompanied the defendant, which refer to said person as the brother, is especially careful to repeat insistently that Felipe Hernán-dez called him brother, but that the witness did not know him. This brother of whom the defendant speaks did not appear to testify at the trial. The defendant admits that the plaintiff, because she had no purse, gave him the note on the day of the execution of the deed of cancellation, but he adds that he returned it to her when he took off his coat at the place he usually kept it. It cannot be argued that the loss of the note is not prejudicial to the plaintiff and that no fraud was intended, since the defendant acknowledged the existence of the note and admits that he has not paid it. This admission made at the trial, under the pressure of cir-cumstances, in the presence of the notary who drew the prom-issory note, is insufficient to establish the honest intention of the defendant's previous acts. Admitting that he had the note, had the defendant offered it in evidence without satis-factorily explaining his possession of it and without attempt-ing to prove the payment thereof, he would have done noth-

ing but confirm the plaintiff's allegations and testimony. His attitude in this respect is in harmony with his conduct at the time of the transaction. As to the amount of the promissory note, the plaintiff says that it should be $300, the defendant claims that it was $270 and the notary, Mr. Susoni, does not remember the amount.

We quote from the opinion rendered by the lower court as follows:

"There is not the slightest doubt in respect to the cancellation of the $570 mortgage made by Francisca A. Rivera, inasmuch as she herself produced the deed of cancellation in evidence. But after a thorough analysis of the oral evidence presented by both sides, the judge is inclined to give fuller credence to the evidence produced by the plaintiff, for the latter brings before the court a theory that is credible and feasible within the range of the logic that rules human events, and above all because it is consistent with the faith that is supposed to exist between a mother and her son; while the theory presented by the defendant is not only unbelievable, but hazy and beyond the limits of human reason. The court has given full credence to the testimony of Francisca Rivera de Hernández because the judge cannot conceive that a respected elderly woman would, after payment of her son's debt to her, be capable of concocting a plot for the purpose of appearing before a court, and with unperturbed serenity state under oath that she had been the victim of her own son's deceit. One had only to look at her while she was testifying to see that she was telling the truth, for even though fate brought her to litigate against her own son, every time she looked at him she did so tenderly.

\* \* \* \* \* \* \*

"On the other hand, the theory adduced by the defendant as we have stated before, was hazy and incredible, inasmuch as we cannot explain how, if Felipe Hernández Rivera was in such need that he was attempting to obtain a loan from the Relief Commission, he could still have $400 in his possession for paying his debt to his mother on March 7, 1930, before coming to Arecibo for the execution of the deed of cancellation. We are certain that this statement of defendant is absolutely false, for if he had the $400 he would not have thought of obtaining a loan, nor would he have paid the money to Francisca when he had such easy terms of payment, at the rate of $100 yearly up to 1933."

The court *a quo* fully believed the testimony of Francisca Rivera. The attorney for the defendant and appellant in his brief contends that the plaintiff admitted having voluntarily executed the deed of cancellation and also admitted that she agreed with her son to substitute for the mortgage obligation, another whereby Felipe Hernández was to pay her $270 in cash and the balance amounting to $300 in a promissory note that was issued and delivered to the plaintiff. The case of *Marrero v. Heirs of Marrero,* 36 P R.R. 565, is cited in support of this contention. The ruling in said case is not applicable in the instant case. In the case of *Marrero v. Heirs of Marrero, supra,* a mortgage credit for $2,000 was canceled. The debtors issued a private document for $4,500 in favor of the mortgage creditors. The trial court accepted as true the explanation given by the defendants to the effect that such private document was issued on the same day that the deed of cancellation was executed, and that the same represented a simulated transaction so that the father-in-law of the widow of Wenceslao Marrero and grandfather of the other defendants, could attach the lands in case that the other creditors of the succession should attempt to effect collection of their credits on the said lands upon their liberation from the mortgage. No matter how reprehensible the conduct of both the plaintiffs and the defendants may have been in said case, the fact remains that the trial court, after weighing the evidence, found that not a cent was owed by defendants to plaintiffs. This Court, however, after examining the case from the plaintiffs' point of view, said:

"If the theory of the plaintiffs, as stated by their counsel at the trial when submitting the private document in question, is true, then what was done was simply to substitute the obligation to pay $2,000 in annual payments of $500 contracted by the ancestor of the defendants by another to pay $4,500 in annual payments of $250 directly contracted by the defendants. The cancellation was explained. However, plaintiff Marrero tried to show that he had been deceived when signing the deed of cancellation.

    ✳        ✳        ✳        ✳        ✳        ✳        ✳

"But merely admitting for the purposes of this case that the private document could be accepted as evidence, then, why should the deed of release be declared void and the defendants adjudged to pay an obligation in compliance with the original contract, if the document itself shows that the deed of release was genuine and there was no deception, but only the execution of a new contract?"

The instant case cannot be regarded as similar to that of *Marrero* v. *Heirs of Marrero, supra*. In the latter case the trial court believed the testimony of the defendants. In the present case the court *a quo*, after a careful analysis of the evidence, concluded that the defendant's testimony was not true and that that of the plaintiff deserved full credence. In the cited case, the plaintiffs alleged but did not prove that they were deceived. In the case herein the deceit is obvious. The plaintiff did not receive the $270 in cash that was promised to her. The promissory note that was issued in her favor cannot be found anywhere. It appears that the defendant had $400 and proceeded to pay a debt that was not due at the time he was in need of a loan from the Relief Commission and it so happens that this defendant, who admits having received a loan of $270 without payment of interest, insists upon the cancellation of the mortgage when, were his testimony true, he already had the money that he needed and it was not necessary to obtain the said loan from the Commission. We conclude that it has been proved in this case that Felipe Hernández Rivera induced the plaintiff, with insidious words and machinations, to cancel the mortgage credit. The deceit of which Francisca Rivera was a victim rendered the consent given by her void, and the court was right in setting aside the cancellation of the mortgage credit. Francisca Rivera testified that she trusted her son and believed that he would deliver the money to her on the day of the cancellation of the mortgage, and that otherwise she would not have canceled it. The presence of the deceit that moved her to act is evident and without it no consent would have been obtained. The plaintiff was induced and per-

suaded to consent by the insidious machinations of the defendant. This is not a case of delay in the payment of a debt. The defendant denies owing the plaintiff the $270 which she says he promised to pay immediately and which he has never paid, the defendant having also agreed to subscribe a document which, although it was issued, cannot be found anywhere. On the contrary the defendant maintains that he paid the mortgage credit in full and that the $270 was a loan made to him by his mother after the cancellation of the mortgage. The falsity of this allegation as well as the deceit practised on the plaintiff have been fully demonstrated.

Lastly the appellant maintains that the lower court erred in adjudging the conjugal partnership to pay the costs. The judgment in this case recites that the costs and attorney's fees are imposed on the defendant. It is clear that the lower court refers only to Felipe Hernández and not to his wife Mercedes González. Mercedes González and Felipe Hernández were not married when the latter purchased and mortgaged the land in favor of the plaintiff. It has not been proved that the wife intervened in the cancellation of the mortgage and therefore the lower court acted properly in imposing the costs solely on the defendant, that is, Felipe Hernández Rivera.

The judgment appealed from must be affirmed.